No. 96-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

MAX SMALL,

      Defendant and Appellant.

FILED

NOV 07 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Big Horn,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      James L. Vogel, Hardin, Montana

      For Respondent:

        Joseph P. Mazurek, Attorney General, Micheal
Wellenstein, Assistant Attorney General, Helena,
Montana; Christine Cooke, Big Horn County Attorney,
Hardin, Montana

Submitted on Briefs:  October 17, 1996

Decided:  November 7, 1996

Filed:

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant Max Small (Small) appeals the decision of the Thirteenth Judicial District Court, Big Horn County, denying his motion to dismiss a charge of felony assault based on the lack of a speedy trial. We reverse and remand with instructions.

On July 25, 1994, the State charged Small with one count of felony assault. Small pled not guilty to the charge at his arraignment and was released on his own recognizance. The District Court scheduled a trial in the matter for November 14, 1994. However, on November 14, 1994, the State moved to continue the trial date on the grounds that the parties had worked out an agreement in the case but that the necessary paperwork had not yet been completed.

On June 27, 1995, the District Court reset the trial for August 15, 1995, but the trial did not take place on that date. On August 25, 1995, the District Court rescheduled the trial for November 7, 1995. On September 7, 1995, the District Court again vacated the existing trial date and reset the trial, this time for December 5, 1995.

On November 30, 1995, Small moved to dismiss the charge for lack of a speedy trial. The issue was briefed and argued before the District Court, which denied the motion. At that time, Small agreed to enter into a plea bargain by which he would plead guilty to a reduced charge of misdemeanor assault. Until this plea bargain, no agreement regarding the disposition of the case was ever reached by the parties although extensive discussions

2

regarding the matter apparently took place. When accepting the plea bargain, Small specifically reserved his right to appeal the ruling on his motion to dismiss for lack of a speedy trial. It is that issue we decide today.

The sole issue raised on appeal is whether the District Court erred by denying Small's motion to dismiss for lack of a speedy trial.

The right to a speedy trial in a criminal prosecution is guaranteed by both the Sixth Amendment to the United States Constitution and by Article II, Section 24 of the Montana Constitution. State v. Hagberg (Mont. 1996), 920 P.2d 86, 91, 53 St.Rep. 528, 531 (citing State v. Thompson (1993), 263 Mont. 17, 31, 865 P.2d 1125, 1134). A speedy trial claim is a question of constitutional law, and we review questions of law *de novo* to determine whether the court's interpretation of the law is correct. Hagberg, 920 P.2d at 91 (citing State v. Cassidy (1978), 176 Mont. 385, 388, 578 P.2d 735, 737; Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; and Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

The United States Supreme Court has established a four-part test to determine whether a defendant's right to a speedy trial has been violated. See Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117. This Court adopted the Barker test in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64. As this Court has noted

3

repeatedly, the Barker test requires the trial court and the appellate court to consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. See, generally, State v. Gould (1995), 273 Mont. 207, 902 P.2d 532; State v. Collier (Mont. 1996), 919 P.2d 376, 53 St.Rep. 534; Hagberg, 920 P.2d 86; State v. Atkins (Mont. 1996), 920 P.2d 481, 53 St.Rep. 561; and State v. Tweedy (Mont. 1996), 922 P.2d 1134, 53 St.Rep. 656.

## 1. Length of delay.

If the length of the delay is not long enough to be presumptively prejudicial, the full speedy trial analysis is not triggered and the court need not consider the remaining three components of the Barker test. If, however, the delay is of such duration that is presumptively prejudicial, the burden shifts to the State to rebut the presumption of prejudice by providing a reasonable explanation for the delay and by showing the defendant was not prejudiced thereby. Atkins, 920 P.2d at 483 (citations omitted).

In this case, the length of the delay from Small's arrest to his ultimate trial date was 511 days. The State concedes that this is a sufficient amount of time to trigger the full speedy trial analysis and to give rise to a rebuttable presumption that the delay prejudiced Small.

## 2. The reason for the delay.

Under the second factor of the Barker test, the reviewing court must allocate responsibility for the delay between the

4

defendant and the State. Since the 511 days in this case supports a finding that the delay was presumptively prejudicial, the burden shifts to the State to rebut that presumption by showing a reasonable explanation for the delay and by demonstrating that the defendant was not prejudiced thereby. Tweedy, 922 P.2d at 1138.

The first delay, of 125 days, was the span of time between Small's arrest and the initial trial date set by the District Court. The State concedes that it is responsible for this first delay, but contends the delay was institutional in nature, generated only by the District Court's calendar and its determination of when the trial could be held. We agree. Institutional delay is weighed less heavily against the State than intentional delay. Tweedy, 922 P.2d at 1138 (citing State v. Weeks (1995), 270 Mont. 63, 891 P.2d 477). Obviously, however, such delay cannot be blamed on the defendant.

The second delay, of 274 days, occurred when the State moved to vacate the first trial date and did not reschedule the trial for over nine months. The State, however, contends that this delay should not be wholly apportioned to it, but that Small should be considered responsible for some portion of this time.

The State says it vacated the original trial date because "the parties [had] reached an agreement but [had] yet to finalize the paperwork." Small, too, acknowledges that a deferred prosecution agreement was discussed. However, no such agreement was ever finalized.

5

The State raises a similar argument for the third and fourth delays (112 days collectively). It contends that Small must be allotted some part if these delays as well because they was caused, at least in part, by the State's understanding that he would come in during that time and plead to a reduced charge of misdemeanor assault in order to dispose of the case. The State contends that this arrangement "gave the State the impression that there would be no trial and thus no speedy trial problem." The State further contends that Small must be held accountable for at least part of these delays because the State's counsel "was under the impression Small was going to plead guilty to the misdemeanor charge of domestic abuse and he simply failed to do so month after month." Again, no such agreement was ever concluded.

Essentially, the State argues that ongoing negotiations, whether they be for deferred prosecution or a plea bargain, somehow relieve it of its duty to bring defendants to trial in a timely fashion. However, the State fails to cite a single case which would support this proposition. In fact, to rule as the State urges would be to compel a criminal defendant to try to choose the lesser of two evils. He could pursue negotiations with the State at the expense of his constitutional right to a speedy trial, or he could preserve the right to a speedy trial by refusing to engage in negotiations. The law does not require such a choice.

This Court has stated that "[i]t has never been incumbent upon a defendant to assist the State in his own prosecution." State v. Fuller (Mont. 1996), 915 P.2d 809, 816, St.Rep. 325, 329. On the

6

contrary, "as a general rule, it is the State's duty to ensure that a criminal case is diligently prosecuted; the defendant has no duty to bring himself to trial." Tweedy, 922 P.2d at 1137. When, as in this case, a plea agreement is not completed, the State retains the duty to proceed as it sees fits, without the assistance of the defendant. If, instead, the State allows the case to languish, the defendant will not be faulted for it. Therefore, all of the second, third and fourth delays also must be charged to the State.

The State, however, also argues that even if it is deemed responsible for the second, third, and fourth delays, they should nevertheless be considered institutional delay and, therefore, weigh less heavily upon the State. While the third and fourth delays may be construed as institutional, the second cannot.

Institutional delay is delay which is caused by circumstances largely beyond the control of either the defendant or the State. It most often will be caused by crowded court dockets and the corresponding difficulties in setting trial dates. Tweedy, 922 P.2d at 1138. The second delay in this case was not caused by such unavoidable scheduling problems. Instead, the State relied on a proposed agreement which never came to fruition, and simply allowed the case to rest for in excess of 270 days. We will not construe such inaction as institutional delay. The third and fourth delays, however, were caused when the District Court, apparently of its own initiative, twice rescheduled the trial. These delays will therefore be deemed institutional.

7

In sum, of the overall delay of 511 days, 274 days are charged to the State outright and 237 are charged to the State but qualified as institutional in nature. None of the delay is attributable to Small.

### 3. The assertion of the right..

The third Barker factor requires that a defendant assert the right to a speedy trial. "[I]f the defendant has moved to dismiss before trial, he has fulfilled the requirement of asserting his constitutional right to a speedy trial." Tweedy, 922 P.2d at 1139 (quoting State v. Britton (1984), 213 Mont. 155, 161, 689 P.2d 1256, 1260). Here, Small moved to dismiss before the matter was brought to trial and thereby asserted his right to a speedy trial in a timely fashion.

While acknowledging that case law supports Small's assertion that he fulfilled the third Barker factor by moving to dismiss before trial, the State nevertheless argues that his assertion of the right was not timely because "Small's pursuit of the plea agreement and his delays in entering a plea show that he was not interested in a speedy trial." Aside from being directly contradicted by the relevant case law, this assertion is merely a reargument of the State's contention that Small was somehow required to choose between pursuing a possible plea agreement and preserving his right to a speedy trial, a contention this Court expressly rejects.

### 4. Prejudice to the defendant.

8

The fourth factor of the Barker test is whether the defendant was prejudiced by the delay. In determining this, the evaluating court must assess the impact of the delay on the following interests: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the defendant's anxiety and concern; and (3) the limitation of impairment of the defense. Atkins, 920 P.2d at 483 (citing Gould, 902 P.2d at 538).

In this case, it is conceded that Small suffered no anxiety attributable to incarceration simply because he was never incarcerated for any length of time. Nor did he credibly allege that the delay had impaired his ability to present an effective defense.

Small does allege, however, that the eighteen-month delay has caused him to suffer substantial anxiety and concern. In particular, Small points out that the victim in this case is his wife and that the witness against him is his son. Small and his wife have reconciled in the time since the assault, and Small claims the prospect that his wife and son ultimately may have to testify against him has impaired their collective ability to function as a family again. Further, Small claims that the pending felony charges have made him a subject of ridicule in his community and have adversely affected his business.

The State argues that these allegations hardly demonstrate the prejudice necessary to justify dismissing the charge. The State also points out that this Court has noted that "a certain amount of anxiety and concern is inherent in being charged with a crime and

9

that the existence of anxiety and emotional distress is notoriously difficult to prove." State v. Thompson (1993), 263 Mont. 17, 33, 865 P.2d 1125, 1135.

The prejudice asserted was recognized by the District Court, but it nevertheless agreed that the prejudice did not rise to a level sufficient to grant Small's motion to dismiss. This determination, however, reflects only consideration of the fourth Barker factor. Nowhere in the transcript or in the District Court's order is there any indication that the other three mandated Barker factors were also considered. In particular, the District Court did not allocate the delay between Small and the State. Nor, apparently, did it factor in the State's responsibility for causing the delay before making its decision.

The delay in this case was inordinately long (511 days). This entire delay must be attributed to the State, and less than half of it may be considered institutional in nature. Small asserted prejudice which the State could not contravene. After considering all the Barker factors, we hold that the District Court erred by refusing to dismiss the charge for lack of a speedy trial.

The judgment of the District Court is reversed, and the case is remanded with orders that the charge against the defendant be dismissed.

_____
Justice

We Concur:

_____

10

_____

_____
W. William Leaphart

_____
Karla M. Gray
Justices

November 7, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

James L. Vogel
Attorney at Law
P.O. Box 525
Hardin, MT 59034-0525

Hon. Joseph P. Mazurek, Attorney General
Michael Willenstein, Assistant Attorney General
215 N. Sanders
Helena, MT 59620

Christine Cooke
County Attorney
Drawer H
Hardin, MT 59034

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy